## ROBERT G. RIDGWAY v. COUNTY OF HENNEPIN.

182 N. W. (2d) 674.

January 8, 1971—No. 42274.

*Rosen, Ravich & Summers, William S. Rosen,* and *Philip W. Getts,* for appellant.

*George M. Scott,* County Attorney, and *John K. Harvey,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Kelly, and Rosengren, JJ.

CHESTER G. ROSENGREN, JUSTICE.*

This case is before the court on an appeal from the order of the district court denying plaintiff's motion for a new trial. Robert G. Ridgway had sued for specific performance of an alleged contract to convey certain real property which defendant, Hennepin County, had advertised for sale and for which plaintiff's bid had been accepted by the county board. The district court found, in essence, that because of an attempted oral modification of the conditions on which bids were sought, no enforceable contract had been created. We affirm. The essential facts of the case are as follows:

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

On May 11, 18, and 25, 1968, Hennepin County published a notice that sealed bids would be received for certain parcels of real property. Included among the advertised descriptions of such parcels was the following:

"* * * Parcel M-15—9511 Cedar Lake Rd. (actual address)— Part of North half of Southwest Quarter, Sec. 7, Twn. 117, R. 21—2-bedroom rambler, fireplace, attached garage. The full legal description of each of the above parcels is on file in the offices of the Hennepin County Auditor, 106 Court House, and the Hennepin County Administrator, 136 Court House, Minneapolis, Minnesota."

In addition to the foregoing advertised descriptions, the county mailed to plaintiff, among others, a circular inviting bids on those properties. That document provided as follows:

"SPECIFICATIONS FOR SALE OF SURPLUS PROPERTIES—GROUP III
Purchasing Department-1968

CONTRACT NO. 470-719-809

"1. INVITATION FOR BIDS: Sealed bids will be received in the office of the Hennepin County Commissioners, 130 Courthouse, Minneapolis, Minnesota until 2:00 p. m. Tuesday, June 4, 1968 for the purchase of the following parcels of surplus property * * *:

| PARCEL No. | ADJACENT ADDRESS | LEGAL DESCRIPTION | APPROXIMATE AREA |
|---|---|---|---|
| | * * * * * | | |
| M-15 | 9511 Cedar Lake Rd. St. Louis Park, Minn. | Part of North half of Southwest Quarter, Sec. 7, Twn. 117, R. 21 (Appraisal Price $16,500.00) | 2-Bedroom rambler, fireplace attached garage |

The full legal description of each of the above parcels is on file in the offices of the Hennepin County Auditor, 106 Court House,

and the Hennepin County Administrator, 136 Courthouse, Minneapolis, Minn. 55415.

"2. CONVEYANCE OF TITLE: The County of Hennepin will convey its interest in the lands purchased by a quit claim deed to the successful bidder for each parcel acquired.

\* \* \* \* \*

"4. BID ACCEPTANCE: The County Administrator reserves the right to accept or reject any part of any bid.

\* \* \* \* \*

"6. CONSUMMATION OF BID: Approximately two weeks after the acceptance of the bid the successful bidder will receive from the County a quit claim deed for property purchased.

"7. MINERAL RIGHTS CLAUSE: Conveyance of such lands reserves to the County any and all iron and/or other valuable minerals in and upon the same with the right to explore for, mine, and remove the same.

\* \* \* \* \*

"OTHER TERMS, CONDITIONS & INSTRUCTIONS

"PROPOSAL & BID ACCEPTANCE: The proposal form will be furnished by the County Purchasing Director and must be submitted in triplicate. The County Purchasing Director reserves the right to accept or reject any part of the proposal to include minor deviations from format or clerical omissions, wherein the acceptance or rejection of such would be in the best interests of the County."

The circular included forms for the bids. Plaintiff submitted on those forms a bid for Parcel M-15, and enclosed his check for $19,705. The bids were opened June 4, 1968. When the bids for Parcel M-15 were to be opened, the bidders were advised that an intended reservation of a restriction on access had not been included in the notices inviting proposals. The bids were opened, and plaintiff's bid was the highest received for Parcel M-15. Thereafter, in a letter dated July 1, 1968, Mr. Richard Bardon, Jr., Hennepin County purchasing manager, recommended ac-

ceptance of certain bids, including that of plaintiff. On July 2, 1968, the Hennepin County Board of Commissioners by resolution accepted that written recommendation, and directed that the chairman be authorized to sign the bills of sale on behalf of Hennepin County conveying the parcels bid for to the respective bidders.

On July 3, 1968, Mr. Bardon mailed a quitclaim deed to plaintiff. Pursuant to the advertisement for bids, that deed recited the legal description as on file in the County Auditor's office; in addition, however, it included the following limitation:

"Except that the party of the first part shall retain the right of access, being the right of ingress to and egress from the Westerly and Northerly sides of the tract herein conveyed onto County State Aid Highway No. 18 and onto that part of County State Aid Highway No. 16 lying West of the East 40 feet thereof * * *."

That restriction, in effect, would necessitate moving the driveway entrance from the northwest corner of the property to the northeast.

After having complained to the county without success, plaintiff on July 30, 1968, filed in Hennepin County District Court a complaint against the county seeking specific performance of an alleged agreement to convey all defendant's interest in the property except mineral rights.

The court denied specific performance, holding, in essence, that no enforceable contract had been created because of an absence of any meeting of the minds of the parties involved. The court based this conclusion largely upon testimony which had been admitted at trial over plaintiff's objection that such testimony should be excluded under the parol evidence rule. The testimony in question indicated that after the invitations for bids had been advertised, county officials became aware that they had neglected to include in the description of the property an intention to restrict access to the property. It appeared that the parcel

had originally been acquired by the county in connection with the construction of County State Aid Highway No. 18 and its interchange with County State Aid Highway No. 16. The parcel in question is located on a corner near the intersection of those highways, and the driveway existing at the time of the advertisement for bids entered the abutting road (County Road No. 16) near the corner. Mr. Donald Lalor of the Hennepin County Highway Department testified as to the need to restrict access at that point for purposes of traffic safety—specifically, that existing usage of the driveway tended to restrict visibility for traffic using the improved roadways. Accordingly, after the oversight in the specifications was discovered, Mr. Lalor, after consulting Mr. Stanley Cowle, Hennepin County administrator, contacted Mr. Sheldon Weinberg, who was to conduct the opening of the bids. Weinberg announced to the bidders in attendance at the opening of the bids that a problem existed with respect to the specific parcel here in question. He then indicated that use of the driveway would be restricted due to retention of ingress and egress by the county and inquired whether, in view of such restriction, the bidders on that parcel wished to withdraw their bids.

There was a dispute in the testimony concerning what was said with respect to the specific restriction. Plaintiff testified that he was told at the opening of the bids that the restriction would entail only "drifting" the driveway access 10 or 15 feet to the east, but as the deed was ultimately drawn access was restricted all the way to the northeastern end of the property. However, there was testimony from Lalor and Weinberg—and the court so found—that they informed plaintiff that they did not have information available respecting the actual extent of the restriction and that upon an inquiry of Weinberg, plaintiff indicated that he desired his bid to be opened even in view of the restrictions to be imposed.

On the basis of such testimony, the court concluded that in view of the imposition of the additional restriction, no definite

proposal had been tendered, with the result that there had been no meeting of the minds of the parties and no contract created.

The basic issue presented is whether there was created an enforceable contract to convey particular real estate without restriction on ingress and egress. We agree with the trial court that no contract was created.

■ It should be noted first that the procedure which the county officials attempted to follow was not in accordance with that prescribed by statute for the public sale of real estate owned by the county. Minn. St. 373.01(3) empowers counties to sell, lease, and convey real property owned by the county, but provides that—

"* * * no sale, lease or conveyance of any such real estate, nor any contract or option therefor, shall be valid, without first advertising for bids or proposals in the official newspaper of the county for three consecutive weeks and once in a newspaper of general circulation in the area where the property is located. The notice shall state the time and place of considering the proposals, contain a legal description of any real estate, and a brief description of any personal property. All proposals shall at that time be considered, and the one most favorable to the county accepted, but the county board shall reserve the right, in the interest of the county, to reject any or all proposals." (Italics supplied.)

It is apparent that the general rule in most jurisdictions with respect to statutes such as the foregoing is that such statutes are to be strictly construed and applied. In 20 C. J. S., Counties, § 172, it is stated that—

"* * * a statute requiring the publication of notice will be strictly construed, and must be strictly complied with; so, a sale is void if it does not conform to the notice of sale with respect to the amount of property involved; or the terms of sale."

In the case at hand, the attempted oral alteration of the terms of the sale at the time of the opening of the bids clearly was not

consistent with the spirit of the public-notice statute, and under a strict construction of that statute, any contract so consummated could be subject to invalidation for failure to comply with statutory requirements.

■ Thus, there can be no question that the transaction as conducted by the county could not be enforced against the purchaser. The purchaser, however, is seeking to enforce against the county a contract limited to the terms of the advertised description. It might be argued that this is justified in that it would seem worthwhile to encourage counties to adhere strictly to the sales procedures required by statute. Those who deal with county officials in such situations ought to be able to do so with confidence that the statutory procedures will be followed, with no last-minute alterations in terms by the county after the bids have been submitted.

Considered reflection indicates that such a result would not be desirable. Public-notice statutes presumably have been enacted primarily to protect taxpayers of the county and only secondarily to protect purchasers of public property. Hence, to penalize the county for the inadvertent mistakes of its officials would be inconsistent with the spirit of the statute. It seems, therefore, that public policy in such cases would dictate that where the statutory requirements have not been met, or there has been an attempted evasion of such requirements, no effective contract has been created.

Under the circumstances presented in this particular case, it appears that to enforce the contract asserted by the purchaser would permit him to profit from the mistake of the county officials—a mistake which was at least partly induced by the actions of plaintiff-purchaser himself, for it was only upon his indicated assent to the attempted modification that the bid was submitted to the county board for approval. Moreover, the circumstances of the bidding were such as to indicate that at no time was there between the parties the mutual agreement which is necessary to the formation of a valid contract.

136

For practical purposes, it must be recognized that, at the time of the bidding, the county employees were acting for and as the county. The relevant statute contains the express reservation that the county board could reject any bids. The invitation also contained the express reservation that the county administrator could reject bids. Aside from that fact, it appears that the county administrator, at the time of opening the bids, retained the discretionary authority to reject any and all bids, for in Hennepin County much of the administrative power traditionally exercised by the county board has been delegated to the county administrator. L. 1967, c. 588, authorized the board of commissioners of Hennepin County to employ an administrator to "be the administrative head of the county government" and to "perform all administrative duties and services as the county board may by resolution designate." L. 1967, c. 588, § 2, subd. 1. The law further provides that "[a]ll administrative matters which require the approval or review of the county board shall be submitted through the county administrator." § 2, subd. 3. Thus, even though, as plaintiff points out, Minn. St. 373.02 provides that "[t]he powers of a county as a body politic and corporate shall only be exercised by the county board, or in pursuance of a resolution by it adopted * * *," it is apparent that it is contemplated by L. 1967, c. 588, § 2, subd. 3, that in Hennepin County an initial screening function is to be performed by the county administrator. Hence, in the proceeding in question, when it became apparent that a mistake had been made in advertising for bids, the initial decision of whether to submit the bids to the county board or to reject them and advertise anew lay with the county administrator.

It is here that the element of inducement on the part of plaintiff enters: When apprised that the property would be subject to some restriction and asked whether he wished to have his bid considered under those conditions, plaintiff responded affirmatively. Hence, it was partly because of this oral representation on his part that the bid was submitted to the county board for

approval. Whether the county administrator simply neglected to include in his submission to the board notice of the restriction, or whether the official felt he possessed delegated authority to insert the restriction after favorable action by the county board does not appear. What is apparent is that but for the affirmative reply of plaintiff the bid would never have been submitted to the board of commissioners. Despite that, plaintiff seemingly would have this court ignore the conditions which existed at the time of bidding and enforce against the county an asserted contract, the conditions of which, in all fairness, cannot be said to have been contemplated by either party at the time of opening the bids. Under such circumstances, it is apparent that there was no meeting of the minds, no mutual assent, to the "contract" now urged by plaintiff. Moreover, as indicated above, any contract which might otherwise have been created through oral agreement, is not cognizable under the public-notice statute.

■ Plaintiff argues that judicial consideration of the occurrences at the time of the bidding is improper because of an asserted application of the parol evidence rule.

It is true that looking only to the advertisement for bids, the bid, and the resolution of acceptance, one could infer that there was a contract sufficiently free from verbal ambiguity that consideration of parol evidence varying the terms thereof would be improper. However, we are of the opinion that the parol evidence rule has no application to the present situation, in which the effect of introducing the parol testimony is not to vary the terms of a written agreement, but rather to demonstrate that there never was a valid contract created. It is well established that the parol evidence rule does not exclude evidence offered to invalidate an instrument. In 30 Am. Jur. (2d) Evidence, § 1035, it is stated:

"The parol evidence rule presupposes an action based on an existing valid contract, and if the issue is as to the validity or legality of the contract, the rule, by its very terms, has no appli-

cation, and extrinsic evidence is admitted to determine that issue, whether such evidence tends to establish the validity or invalidity of the contract in question. Such evidence does not vary or contradict the writing, but serves to establish that it has no force or efficacy." (Citations omitted.)

See, also, 7 Dunnell, Dig. (3 ed.) § 3376. In the present case, introduction of parol testimony established that in fact there had been no mutual agreement between the parties here involved and that no valid contract was created. The decision of the trial court is accordingly affirmed.

Affirmed.

KELLY, JUSTICE (concurring specially).
I concur in the result.