Nancy L. HANSON, et al., Respondents,

v.

Fred L. STOERZINGER, et al., Appellants,

The Igo Company, Defendant.

No. 48890.

Supreme Court of Minnesota.

Sept. 5, 1980.

Rehearing Denied Dec. 30, 1980.

Robert E. Faricy and Mark Cosimini, St. Paul, for appellants.

Thomas E. Ticen, Bloomington, for Hanson, et al.

Robert P. Abdo, Minneapolis, for Igo Co.

Heard before OTIS, ROGOSHESKE, and PETERSON, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendants Antoinette and Fred Stoerzinger challenge on this appeal the trial court's determination that plaintiffs Nancy and Donald Hanson are entitled to defendants' earnest money as liquidated damages for breach of an agreement to purchase real estate.

In August 1974, pursuant to a contract for deed, the Hansons purchased from Gerhard and Carmen Evenson certain real property located in Dakota County, including the Terrace Motel. Previous to the purchase the Evensons informed the Hansons that a portion of the property had been condemned by the state highway department. The Evensons pointed out to the Hansons what they stated was the location of the highway department's right-of-way line and told the Hansons the property's area was 1¾ acres.

The Hansons took possession of the property and began to operate the motel. In 1976 they decided to sell their interest in the property. They listed the property with a real estate firm, defendant Igo Company (Igo). The Hansons gave Igo the same information regarding the physical characteristics of the property as the Evensons had given them.

The Stoerzingers inspected the property in July 1976. Donald Hanson indicated to Fred Stoerzinger the locations of the property's boundary lines and pointed out the portion of the property that had been condemned by the highway department. Although the Stoerzingers received a brochure stating that the property's area was equal to 1 acre, Fred Stoerzinger testified that Donald Hanson said the area was actually "closer to an acre and three-quarters." Donald Hanson testified that he recalled telling the Stoerzingers the area of the property was 1½ acres.

On August 4, 1976, the Hansons and the Stoerzingers entered into an agreement for the purchase of the property by the Stoerzingers for a total price of $154,000. The purchase agreement acknowledges Igo's receipt from the Stoerzingers of $10,000 as earnest money. In the space provided for a legal description of the property, the purchase agreement states "legal to govern." [1] The purchase agreement further provides:

> The seller shall, within a reasonable time after approval of this agreement, furnish an abstract of title * * *. The buyer shall be allowed 10 days after receipt thereof for examination of said title and the making of any objections, said objections to be made in writing or deemed to be waived.

The purchase agreement set November 1, 1976, as the date for the closing of the transaction.

The Hansons obtained the abstract of title to the property from the Evensons and took it to an abstract company for updating. The Hansons then delivered the abstract to Seldon H. Caswell, an attorney retained by the Stoerzingers to examine the title.

The abstract of title delivered to Caswell contains a legal description of the property.[2] Attached to the abstract of title is a map of the property showing the location of the frontage road proposed by the highway department. At the bottom of the map "PROPOSED AFTER .54 acre remaining" is written.

Caswell approved the title. In a telephone conversation with Fred Stoerzinger, Caswell mentioned that some of the property had been condemned by the highway

1. "Legal to govern" is a reference to the legal description of the property.

2. The property is described in the abstract of title as follows:

> That part of the SE ¼ of the NW ¼ of Section 2, Township 27, Range 23, described as follows: Beginning at a point on the west line of said SE ¼ of the NW ¼, distant 370 feet north of the stone monument located at the most westerly corner of Lot 8 of the Robert O'Neill Homestead; thence running east at right angles to said west line 491.25 feet to an intersection with the southwest right of way line of Trunk Highway No. 55; thence northwest on the last named line 559.- 08 feet to an intersection with said west line; thence south on said west line 266.9 feet to the point of beginning; excepting, however, therefrom all that part of the aforesaid described land which lies northeasterly of a line run parallel with and distant 169 feet southwesterly of the following described line: Beginning at a point on the west line of said section 2, distant 959 feet south of the northwest corner thereof; thence running southeasterly at an angle of 61° 31' with said west section line for 2188.7 feet and there terminating; said excepted land containing 0.95 acre more or less.

department. Stoerzinger indicated that he knew of the condemnation. Caswell and Stoerzinger did not discuss the amount of land remaining after the condemnation.

The Hansons had meanwhile entered into an agreement to purchase a house in Burnsville, Minnesota, contingent upon the closing of the sale of the motel property. The agreement would be void, however, if the contingency were not removed by October 14, 1976. The Hansons asked the Stoerzingers to agree in writing to close the sale of the motel property on November 1, 1976. The Stoerzingers signed the proposed agreement on October 12, 1976, and the Hansons thereafter removed the contingency on their agreement to purchase the Burnsville house.

The parties later agreed to change the closing date to November 2, 1976. They met on that date at Caswell's law offices. When the Stoerzingers saw the map attached to the abstract of title and learned that the property they had agreed to buy was only slightly over ½ acre in area, they refused to close the transaction. On December 15, 1976, the Stoerzingers served upon the Hansons notice that the purchase agreement would be cancelled after 30 days unless the Hansons could within that time convey 1¾ acres under a contract for deed containing terms as provided in the purchase agreement.

The Hansons thereafter brought suit against the Evensons for rescission of the contract for deed pursuant to which the Hansons had purchased the property and for damages, on the ground that the Evensons had fraudulently induced them to enter the contract. The jury found that the Evensons had misled the Hansons as to the location on the property of the right–of–way line established by the highway department condemnation. By an order dated June 20, 1977, the trial court directed entry of judgment for the Hansons in the amount of $23,470.94, plus interest, costs, and disbursements.[3]

On December 22, 1976, the Hansons commenced this action against the Stoerzingers and Igo, alleging that the Stoerzingers breached the purchase agreement and seeking as liquidated damages the earnest money held in escrow by Igo. The Stoerzingers counterclaimed for rescission of the purchase agreement on the ground that they had been induced to enter into the purchase agreement by the Hansons' misrepresentations regarding the property's acreage. The matter was tried without a jury in June 1977. The trial court concluded that the Stoerzingers were not entitled to rescind the purchase agreement and that their refusal to close the transaction constituted a breach of the purchase agreement. The trial court accordingly directed Igo to deliver the earnest money to the Hansons. The Stoerzingers then moved for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, a new trial. They now appeal from the trial court's order denying their motion.

The trial court's determination that the Stoerzingers were not entitled to rescind the purchase agreement appears to have been based on a theory of waiver. In the memorandum accompanying its order, the trial court pointed to the facts that the correct acreage of the property was calculable from the property's legal description, the Stoerzingers' attorney reviewed the abstract of title containing the legal description, the Stoerzingers made no objection regarding the acreage within the time the purchase agreement provided for making objections, and the Stoerzingers agreed in writing to close the transaction on November 1, 1976.

We do not agree that these facts compel the conclusion that the Stoerzingers waived rescission of the purchase agreement.

In our view, the sole effect of the parties' separate agreement to close the transaction on November 1, 1976, was to make the date

---

**3.** In the Hansons' action against the Evensons, the Hansons sought, *inter alia*, damages of $19,000 as compensation for losses they claimed they suffered on account of the Stoer- zingers' refusal to close the sale of the property. The jury's award did not, however, include compensation for that loss.

of closing essential to their contract. The separate agreement creates no further rights or obligations under the purchase agreement and therefore is irrelevant to the question whether the Stoerzingers are entitled to rescission.

█ Although the precise area of the property was calculable from the legal description contained in the abstract of title, the abstract was never in the Stoerzingers' possession before the date of closing. The Stoerzingers' attorney had possession of the abstract, but only for the purpose of examining the title to the land described therein. There is no evidence in the record to suggest he knew the Stoerzingers believed the area of the property was greater than 0.54 acre. From the context of the clause in the purchase agreement requiring that objections be made within 10 days after the buyer's receipt of the abstract, it is clear that the requirement applies only to objection to title. The Stoerzingers' objection is not to the title but to the property itself.

█ Nor, under the circumstances of this case, do we agree with the trial court's suggestion that the use in the purchase agreement of the term "legal to govern" imposed upon the Stoerzingers a duty to make certain that the area of the property, as calculated from the legal description, coincided with the Hansons' representations. The purchase agreement was prepared by the Hansons' agent, it contains no disclaimer of oral representations regarding the property's physical characteristics, and the Hansons' representations amounted to assurances that the property, legally described, included at least 1½ acres.[4]

In our view the record in this case contains ample evidentiary support for a determination that the Stoerzingers are entitled to rescission of the purchase agreement on the ground of misrepresentation or, alternatively, mutual mistake. However, we remand the matter to the trial court for its

independent consideration and findings on the issue.

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

4. In connection with the use in the purchase agreement of the term "legal to govern," we note that although parol evidence is generally inadmissible to vary the terms of a written contract, it is admissible to determine whether a contract is void or voidable on grounds of fraud, illegality, accident, or mistake. 3 A. Corbin, Contracts § 580 (1960); *see Ridgway v. County of Hennepin*, 289 Minn. 128, 137–38, 182 N.W.2d 674, 679 (1971).