# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3127

_____

Watkins Incorporated,

          Appellee,

          v.

Chilkoot Distributing, Inc.,
a foreign corporation; Cecile Willick;
Lili J. Willick; Richard Willick,

          Appellants.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   District of Minnesota.
*
*
*
*
*

_____

Submitted: May 11, 2011
Filed:  September 13, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Chilkoot Distributing, Inc., Cecile Willick, Lili J. Willick, and Richard Willick (collectively the "Appellants") appeal the district court's adverse grant of summary judgment in favor of Watkins Inc., on their claim for breach of a 1988 contract between the parties.  The district court held that the 1988 contract had been superseded by a subsequent agreement between the parties, and thus the Appellants' claim for breach of the 1988 contract failed as a matter of law.  Because we conclude that there is a genuine issue of fact as to whether the Appellants and Watkins mutually assented to enter a new contract, we reverse and remand.

I.

We review a district court's grant of summary judgment de novo, Mwesigwa v. DAP, Inc., 637 F.3d 884, 887 (8th Cir. 2011), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. Alpine Glass, Inc. v. Ill. Farmers Ins. Co., 643 F.3d 659, 666 (8th Cir. 2011). The parties agree that Minnesota law applies.

Watkins manufactures personal care, household, and organic products. In addition to selling its products directly to large retailers, the company utilizes a direct-sale business structure whereby it enters into independent-contractor agreements with sales associates. The sales associates purchase Watkins products directly from the company, resell the products to retailers and individuals, and recruit new sales associates who also distribute Watkins products. The recruited associates are collectively referred to as the initial sales associate's "downline organization." As an incentive to expand the downline organization, Watkins pays associates commission on downline sales. The company also includes downline sales in the associate's total sales volume, which is the basis for calculating the associate's discount on products purchased from Watkins for distribution.

In 1988, the Appellants signed a "Dealer Agreement" with Watkins (the 1988 Agreement) and became Watkins sales associates . The 1988 Agreement provided that it may be terminated by mutual written cancellation, by written notice sent by the Appellants to Watkins, or by Watkins if the Appellants engage in certain prohibited conduct. The 1988 Agreement incorporated Watkins' Code of Ethics and Rules of Conduct by reference, which included the compensation scheme for sales associates.

As the Appellants' business thrived in eastern Canada, they were successful in recruiting new sales associates and growing their downline organization. In 1990, the Appellants recruited astute salesman Paul Darveau, who, along with his downline associates, sold a high volume of Watkins insect repellant and spurred product distribution in Quebec. In 2000, the Appellants recruited the Lambert Group,[1] which likewise fared well in selling Watkins insect repellant. The Lambert Group's sales volume skyrocketed when it began marketing to mass-market retail outlets and large chain stores in Quebec. Because Darveau and the Lambert Group were part of the Appellants' downline organization, the Appellants received commissions and discounts based on these downline associates' substantial sales volume.

In 2006, Watkins sent the Appellants a letter with the salutation "Dear Watkins Associate(s)," and Watkins enclosed an "International Associate Agreement" (the 2006 Agreement) with the letter. The letter stated:

> Periodically, we review records to ensure we have accessible and up-to-date contract documents. We have found that a number of documents have been archived during the last ten years, which makes it a challenge to have accessible contracts. We are requesting your support to provide us with updated and accurate data by filling out the enclosed International Associate Agreement.
>
> We ask that you complete a new Agreement Form and return it to Watkins Incorporated by May 15, 2006. Should you have your original contract with up-to-date data, feel free to send us a copy of that document.

---

[1]In 2005, the Appellants facilitated the sale of Darveau's business to the Lambert Group. The Lambert Group eventually sold its business to Les Distribution du Rêve. It is not clear from the record under what name the resulting entity operated. The distinction is not legally significant here, and we refer to the pre-sale and post-sale entity simply as the Lambert Group.

(Appellants' Add. at 14.) According to Watkins, it sent this letter to many of its Canadian sales associates out of necessity because a flood had destroyed its records database. The 2006 Agreement did not track the language of the 1988 Agreement, and in fact included vastly different terms. As relevant here, the 2006 Agreement provided that Watkins could unilaterally amend its corporate policies and procedures, and the associates would be bound by such amendments. Upon receipt of Watkins' letter, Cecile Willick contacted Watkins and spoke with one of its managers. Cecile asked the manager whether it was necessary to complete the form because Watkins had current contact information for the Appellants. The manager instructed Cecile that Watkins wanted all sales associates to complete the form to ensure that all its records were current. The Appellants completed the form with the appropriate information, signed it, and faxed it to Watkins in July 2006.

Also in 2006, the Lambert Group narrowed its focus to large retailers and increased its already high sales volume. This strategy began to hamper Watkins' own direct sales to large retail customers because of different price quotations provided for the same products by the respective sellers. In addition, the Lambert Group's designation as a "sales associate" meant Watkins sold its products to the Lambert Group at a discounted price while paying commissions to the Appellants and their upline sales associates. Because the Lambert Group's sales volume was higher than Watkins' projected sales volume for sales associates, Watkins deemed the Lambert Group's sales model irreconcilable with the direct-sale structure. Watkins attempted to negotiate a different, profitable compensation arrangement with the Lambert Group and the Appellants. The negotiations proved unsuccessful, and in 2009 Watkins changed the Lambert Group's seller status from "sales associate" to "manufacturer representative," relying upon the clause in the 2006 Agreement which arguably permitted this unilateral change. The Lambert Group subsequently consented to the new designation and corresponding relationship with Watkins. The changed designation stymied the Appellants' entitlement to commissions on the Lambert

Group's sales because only recruited "sales associates" were included in an associate's downline organization structure.

In May 2009, the Appellants sent a letter to Watkins alleging breach of contract and breach of good faith and fiduciary obligations. Watkins then filed suit in federal court, seeking a declaratory judgment that it acted within its contractual rights. The Appellants counterclaimed for breach of contract, among other claims.[2] Each party filed a motion for summary judgment, and the threshold issue presented to the district court was whether the parties were bound by the terms of the 1988 Agreement or the terms of the 2006 Agreement. The district court held that the 2006 Agreement superseded the 1988 Agreement as a matter of law because, by signing the 2006 Agreement, the Appellants objectively expressed their intent to enter a binding contract. Accordingly, the district court granted summary judgment in favor of Watkins on the Appellants' claim for breach of the 1988 Agreement.

II.

The issue here is whether the parties intended to enter a new agreement in 2006 that superseded the parties' existing 1988 Agreement.[3] If reasonable minds could differ as to whether the Appellants manifested intent to enter the 2006 agreement, summary judgment was improper. See Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 532 (8th Cir. 2006) (applying Minnesota law). Ordinarily, the existence of a contract is a question of fact to be determined by the jury. Morrisette v. Harrison

---

[2]The Appellants also asserted claims of quantum meruit, promissory estoppel, unjust enrichment, reformation of contract, and interference with business expectancy.

[3]We note that although the facts in this case seem to raise contract modification standards, in Minnesota, "[p]arties can alter their contract by mutual consent, and this . . . is merely the substitution of a new contract for the old one." Olson v. Penkert, 90 N.W.2d 193, 203 (Minn. 1958) (citation omitted). Accordingly, our analysis focuses on contract creation.

Int'l Corp., 486 N.W.2d 424, 427 (Minn. 1992). Whether a contract has been formed depends on the parties' intent as evidenced by their objective conduct, not by their subjective intent. Cederstrand v. Lutheran Bhd., 117 N.W.2d 213, 221 (Minn. 1962). In making the determination, the "surrounding facts and circumstances in the context of the entire transaction, including the purpose, subject matter, and nature of it" are relevant. Morrisette, 486 N.W.2d at 427 (quoting Capital Warehouse Co. v. McGill-Warner-Farnham Co., 149 N.W.2d 31, 35 (Minn. 1967)).

Considering the surrounding facts and context of the 2006 Agreement,[4] and viewing the evidence in the light most favorable to the Appellants, we conclude that reasonable minds could differ as to whether the parties intended to enter a new agreement. Although Watkins contends that the Appellants' signature is dispositive of the issue, see Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982), this is not a case where there is a single contract signed by a party who later attempts to escape the agreement by asserting a misunderstanding of the terms or a failure to read the contract, cf. U.S. Fid. & Guar. Co. v. Siegmann, 91 N.W. 473, 474 (Minn. 1902). Here, the factfinder could conclude that neither Watkins nor the Appellants intended to enter a new agreement in 2006. Watkins and the Appellants had a longstanding relationship and an existing contract that had been in effect for nearly twenty years. The form Watkins sent the Appellants arrived with a letter requesting only that the Appellants fill out the form to provide updated contact information for Watkins' records. Watkins then confirmed to the Appellants over the telephone that it needed the Appellants' contact information and requested they complete the form for that purpose. Moreover, even though the terms in the 2006 Agreement and the terms in the parties' 1988 Agreement were significantly different, the letter instructed that the Appellants could send Watkins a copy of the 1988 Agreement with their contact

---

[4]Watkins argues that the parol evidence rule precludes us from considering any evidence outside the four corners of the 2006 Agreement, but the parol evidence rule does not apply to the question of whether a contract was formed. Ridgway v. Hennepin Cnty., 182 N.W.2d 674, 679 (Minn. 1971).

information in lieu of filling out the attached form. When the facts are developed at trial, a reasonable factfinder could reach one of several factual conclusions: (1) the Appellants were misled into believing that the terms of the 1988 Agreement would continue to govern the parties' contractual relationship; (2) both parties intended for the 1988 Agreement to continue; or (3) the parties objectively manifested their intent to supersede the 1988 Agreement and enter a new contract in 2006. Thus, summary judgment is precluded.

## III.

Because we conclude there is an issue of fact as to the threshold issue of whether the parties intended for the 2006 Agreement to supersede the 1988 Agreement, we reverse and remand for proceedings consistent with this opinion. We express no opinion as to the other holdings in the district court's summary judgment order.

_____