# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3490

_____

Watkins Incorporated

*Plaintiff - Appellee*

v.

Chilkoot Distributing, Inc.,
a foreign corporation;
Cecile Willick; Lili J. Willick;
and Richard Willick

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 14, 2012
Filed: July 8, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Watkins, Inc. ("Watkins") brought this diversity action seeking a declaratory judgment that it did not breach its contract with Cecile ("Cec"), Lili, and Richard Willick, doing business as Chilkoot Distributing, Inc. ("Appellants"). Appellants

raised various legal and equitable counterclaims. In the initial round of litigation, the district court[1] granted Watkins's motion for summary judgment, finding a later agreement had superseded the parties' initial contract, and dismissed all of Appellants' legal and equitable counterclaims. We reversed and remanded, concluding there was an issue of material fact regarding which of two possible contracts governed the dispute.

On remand, Watkins renewed its motion for summary judgment, arguing there was no breach regardless of which contract applied. The district court agreed, re-entered summary judgment for Watkins, and again dismissed Appellants' equitable counterclaims. We now affirm.

I.

Watkins is a manufacturer of various personal care, household, and organic products. Watkins utilizes a direct-sales business structure, and in 1988 Appellants signed a "Dealer Agreement" ("the 1988 Agreement") with Watkins to become sales associates in Canada. In 2006, Appellants signed another agreement with Watkins, called an "International Associate Agreement" ("the 2006 Agreement"). A dispute remains regarding whether the parties intended for the 2006 Agreement to supersede the 1988 Agreement,[2] but it is not relevant to the instant appeal.

Appellants were successful in their sales of Watkins products and also in recruiting new sales associates. These new recruits became part of Appellants'

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]Our earlier opinion in this case contains additional background regarding this factual dispute. See Watkins Inc. v. Chilkoot Distrib., Inc., 655 F.3d 802, 803-05 (8th Cir. 2011).

"downline," an important source of revenue and product discounts for a Watkins sales associate.[3]  A particularly valuable member of Appellants' downline was an entity the parties refer to as the Lambert Group.[4]  Beginning in the 1990's, the Lambert Group sold substantial volumes of Watkins insect repellent in Quebec.

Sales expanded further in the mid-2000's, when the Lambert Group began to explore distribution and sale of insect repellant to large, mass-market retailers in Quebec.  Watkins policy generally prohibited sales associates from selling their product in self-service retail stores,[5] a business Watkins handled directly.  In 2006, however, Watkins granted the Lambert Group permission to sell Watkins insect repellant to any account headquartered in Quebec, including large retail chains.  For the next few years, the Lambert Group sold substantial volumes of Watkins insect

_____

[3]Sales by downline associates count towards an "upline" associate's total sales volume, with greater sales volume resulting in larger discounts on products purchased from Watkins.  Upline associates also receive commissions for sales by their downline associates.  These two perks incentivize the recruitment and maintenance of a large downline sales force.

[4]In 1990, a man named Paul Darveau joined Appellants' downline.  With the assistance of Cec Willick, he developed a prosperous Watkins business in Quebec, focusing primarily on insect repellant.  In 2005, Darveau sold his business to Denyse and Gilbert Lambert ("the Lambert Group"), two members already in Appellants' downline.  Watkins reviewed and approved the sale of Darveau's business.  See Appellants' App. 101.
    The district court referred to the Lambert Group as "Les Distribution," the name of the group that later purchased the Lambert Group's business. We refer to the pre-sale and post-sale entity as the Lambert Group, in keeping with the practice of both parties.

[5]In 2004, Watkins created a program called the Associate Retail Initiative, which allowed associates to sell a small array of Watkins products through "local retail outlets," such as independent drugstores and pharmacies. See Appellants' App. 87. This program did not allow for sales through national, mass-market retail chains. See id. at 94.

repellant to large retail accounts in Quebec. The Lambert Group remained a sales associate in Appellants' downline, so Appellants and other upline sponsors earned commissions equal to roughly 14% of the Lambert Group's gross sales, including sales to large retailers. Additionally, due to their high sales volume, the Lambert Group was able to purchase merchandise from Watkins at a steep discount (roughly 61% off retail price). As a result of the discount and the upline commissions, Watkins retained only 25% of the retail price of products sold by the Lambert Group.

By late 2008, Watkins determined that the arrangement with the Lambert Group and Appellants was financially disadvantageous, and Watkins sought to restructure the discount for the Lambert Group and the commissions to the Lambert Group's uplines. In correspondence with Appellants, Watkins said they would need to retain at least 35% of the retail sales price of products sold by the Lambert Group. Watkins suggested that Appellants and the Lambert Group could perhaps negotiate between themselves to come up with the difference. Watkins also suggested it might simply work with the Lambert Group directly. The record does not provide details of any subsequent negotiations between Appellants and the Lambert Group, and it does not appear that they reached an agreement to adjust the discounts or commissions.

In January 2009, Watkins removed the Lambert Group as a sales associate and changed its classification to "manufacturer's representative." In this capacity, the Lambert Group continued to sell insect repellant to large retailers, but it reported directly to Watkins. As a result of this change, the Lambert Group was no longer a part of Appellants' downline, which meant Appellants were no longer eligible to receive commissions on the Lambert Group's retail sales.[6] Watkins did offer to pay

---

[6]The Lambert Group's direct-selling business and downline associates, which constituted a relatively small portion of its overall sales, became part of Appellants' downline.

Appellants half of the commission they had previously received on the Lambert Group's sales for one additional year (through December 2009), and Appellants accepted these reduced payments.

In May of 2009, counsel for Appellants sent Watkins a letter regarding the Lambert Group's reclassification, which contained various allegations of breach of contract. Shortly after, Watkins filed suit in federal court in Minnesota, seeking a declaratory judgment that it acted within its rights. Appellants counterclaimed for breach of contract and various equitable remedies. The parties cross-moved for summary judgment, and the district court held (1) the 2006 Agreement superseded the 1988 Agreement, (2) Watkins did not breach the 2006 Agreement, and (3) Appellants were not entitled to equitable relief. Watkins, Inc. v. Chilkoot Distrib., Inc., Civil No. 09-1115 ADM/FLN, 2010 WL 3515671, at *3-6 (D. Minn. Aug. 31, 2010). The district court entered summary judgment in favor of Watkins. Id. at *6.

On appeal, we reversed the district court's first grant of summary judgment to Watkins. Watkins Inc., 655 F.3d at 803. We held that material issues of fact existed regarding which contract—the 1988 Agreement or the 2006 Agreement—governed the dispute, and we remanded the case for additional proceedings. Id. at 805-06. We expressed no opinion regarding the district court's other holdings, such as the dismissal of Appellants' equitable counterclaims. Id. at 806.

On remand, Watkins once again moved for summary judgment, this time arguing that regardless of which agreement applied, there was no breach of contract. The district court agreed and granted summary judgment to Watkins, holding that Watkins's reclassification of the Lambert Group did not breach either the 1988 Agreement or the 2006 Agreement. Watkins, Inc. v. Chilkoot Distrib. Inc., Civil No. 09-1115 ADM/FLN, 2011 WL 5008036, at *4-5 (D. Minn. Oct. 20, 2011). The district court dismissed Appellants' counterclaim for breach of contract, and also

dismissed Appellants' equitable counterclaims. Id. at *5-6. Appellants now appeal the district court's second grant of summary judgment to Watkins.

## II.

We review a district court's grant of summary judgment de novo, BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 893 (8th Cir. 2013), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). We review any findings of fact for clear error, Deal v. Consumer Programs, Inc., 470 F.3d 1225, 1229 (8th Cir. 2006), and we view all facts and make "all reasonable inferences in the light most favorable to the nonmoving party," BancorpSouth Bank, 706 F.3d at 893 (internal quotation omitted). Both parties agree that this diversity case is governed by the substantive law of Minnesota.

## A.

In Minnesota, breach of contract requires that the non-breaching party "must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011). Here, the only issue is the third element—whether Watkins's reclassification of the Lambert Group constituted a breach of contract. Appellants argue that by removing the Lambert Group from their downline, Watkins breached either the 1988 Agreement or the 2006 Agreement. Watkins counters that regardless of which agreement governs, changing the status of the Lambert Group from sales associate to manufacturer's representative was not prohibited by either contract, and thus cannot be a breach.

We agree with Watkins. Appellants point to no portion of either agreement that prohibits Watkins from reclassifying a sales associate as a manufacturing representative. And Appellants have presented no law from the state of Minnesota, or any other authority, that persuades us they possess a cause of action for breach where, as here, the agreements are completely silent as to Watkins' authority to reclassify sales associates. Of course, Watkins may have other, business-related incentives to avoid reclassifying members of an associate's downline. Building a successful downline network likely takes years of effort and investment, and if a company gained a reputation as unfairly (if not illegally) depriving sales associates of their downline, presumably the company's ability to recruit new associates would suffer. But negative business implications aside, we cannot find any legal basis supporting Appellants' claim for breach.

Appellants argue Watkins's failure to protect the Appellants' downline, or "line of sponsorship," constitutes a breach of the express terms of the 1988 Agreement.[7] In particular, Appellants point to a provision in Watkins Corporate Policies & Procedures,[8] titled "Changing Line of Sponsorship," which states that "[a]ny changes in the line of sponsorship within a Central Directorship[9] must be mutually agreed

---

[7]Watkins argues Appellants raise the "line of sponsorship" argument for the first time on appeal, but we do not agree. On remand, counsel for Appellants advanced the same "line of sponsorship" argument presented in this appeal. See Cross-mots. for Summ. J. Hr'g Tr. 24, Oct. 11, 2011, ECF No. 72. Additionally, the district court addressed the "line of sponsorship" argument, at least indirectly, when it held that "no contract provision guarantees permanence of downline associates." Watkins, Inc., 2011 WL 5008036, at *5.

[8]Watkins Corporate Policies & Procedures are incorporated into both the 1988 and 2006 Agreements between Watkins and Appellants.

[9]Neither party defines Central Directorship, but based on our reading of the Corporate Policies & Procedures it appears to mean a Watkins Director—a sales associate who has met certain sales and sponsorship qualifications, such as

upon by all parties whose income may be affected."[10]  Appellants' App. 50.  But we agree with Watkins that this provision does not apply to the facts of this case.  The cited provision does not prohibit, or even discuss, the reclassification of a sales associate's relationship with Watkins.  And the Lambert Group was not changing their line of sponsorship (i.e. changing from one Director to another), but rather was reclassified by Watkins as a manufacturing representative.  Watkins, a corporate entity, is not a Director, see id. at 66 (defining "Independent Marketing Director" as a "Representative who has met the sales and sponsoring qualifications," and further defining "Independent Marketing Representative" as "an individual or couple"), and does not have lines of sponsorship, see id. at 68 (defining "Sponsoring" as "[t]he action of helping people to begin their personal Watkins home-based business, by registering that person with Watkins *with the purchase of a Representative Kit and the signing of the International Marketing Representative Agreement*") (emphasis added).  Although this provision clearly prohibits "poaching" among sales associates and Directors, we do not believe it controls the instant situation: Watkins' reclassification of a sales associate.

Appellants argue the district court failed to view the facts in the light most favorable to them, the non-movant, when it concluded the Lambert Group committed an "ongoing violation of Watkins'[s] prohibition on self[-]service retail sales." Watkins, Inc., 2011 WL 5008036, at *5.  In support of their argument, Appellants point to portions of the record showing that in 2006, Watkins gave the Lambert Group permission to sell to self-service retails chains in Quebec.  See supra Part I.

_____

Appellants—and all of the Representatives in their downline.  See Appellants' App. 65-66 (defining "Directorship" and "Independent Marketing Director").

[10]The provision also requires minimum periods of inactivity upon changing lines and outlines penalties for continuing sales during these inactive periods.  This likely deters Watkins representatives from "poaching" the downline associates of other representatives, thus reducing competition among Watkins representatives in much the same way territories of operation reduce competition among franchisees.

But even if the Lambert Group had permission to make sales to large retailers, we read the district court's opinion to hold that Watkins was justified in reclassifying the Lambert Group either due to absence of any prohibition on changing the status of a sales associate or, alternatively, due to the Lambert Group's alleged sales to self-service retailers that violated the agreements. See, e.g., Watkins, Inc., 2011 WL 5008036, at *3 ("Nothing in the 1988 Agreement or the incorporated Rules of Conduct or Code of Ethics prohibit Watkins from changing the status of a representative *or* taking action when a representative has failed to comply with the terms of the agreement.") (emphasis added); id. at *4 ("The 2006 Agreement, as well as the incorporated Corporate Policies and Procedures, do not prohibit Watkins from changing a representative's status *or* from taking action when a representative has failed to comply with the terms of the agreement.") (emphasis added). Because we agree with the former ground for awarding summary judgment, and because this ground for summary judgment is not affected by the Lambert Group's compliance with any retail sales policy or exception, any failure by the district court to view this aspect of the record in the light most favorable to Appellants was harmless. See Alexander v. Pathfinder, Inc., 91 F.3d 59, 63 (8th Cir. 1996) (applying harmless error in civil dispute where district court considered materials outside of pleadings in resolving motion to dismiss without converting matter to summary judgment); see also Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 670-71 (8th Cir. 2013) ("This court can affirm on any basis supported in the record.").

B.

Appellants also argue that Watkins breached the implied covenant of good faith and fair dealing. See In re Hennepin Cnty. 1986 Recyling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (holding that the implied covenant of good faith and fair dealing is read into every Minnesota contract). As an initial matter, Watkins argues Appellants waived any implied covenant argument by failing to raise the issue in the district court. We disagree. Appellants did raise the issue, albeit in a much more

abbreviated form, in the district court. <u>See</u> Defs.' Reply Mem. in Supp. of Summ. J. 9, ECF No. 33 ("Watkins sharp tactics are a breach of the implied covenant of good faith and fair dealing . . . ."); Cross-Mots. for Summ. J. Hr'g Tr. 30-31, July 13, 2010, ECF No. 48 ("One of the statements that I like the most is that -- and they're talking about the doctrine of good faith in contracts and that this is an implied obligation in all contracts.").[11]  Although we agree with Watkins that Appellants now present the implied covenant issue with much greater vigor than they did in the district court, we decline to consider the argument waived. <u>See</u> <u>Se. Mo. Hosp. v. C.R. Bard, Inc.</u>, 642 F.3d 608, 621 (8th Cir. 2011) (declining to find issue waived, in part, because issue was "at least mentioned" in the party's summary judgment motion); <u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 715-16 (8th Cir. 2008) (finding issue sufficiently raised when it was presented in a single, lengthy footnote in a response brief in the district court).

However, even considering Appellants' implied covenant argument on the merits, we are not persuaded that Watkins's actions breached the implied covenant of good faith and fair dealing.  Although the implied covenant of good faith and fair dealing is read into every Minnesota contract, <u>see</u> <u>In re Hennepin Cnty. 1986 Recyling Bond Litig.</u>, 540 N.W.2d 494, 502 (Minn. 1995), it "does not extend to actions beyond the scope of the underlying contract," <u>id.</u> at 503.  "The implied covenant of good faith and fair dealing serves only to enforce existing contractual duties, and not to create new ones." <u>Teng Moua v. Jani-King of Minn., Inc.</u>, 810 F. Supp. 2d 882, 893 (D. Minn. 2011).  As noted above, Watkins had no duty under either agreement to guarantee the permanence of downline associates and no duty to maintain a downline associate's initial classification as a sales associate.  Such burdens were simply not present in the agreements, and apparently were not

_____

[11] Although Appellants suggest the issue was raised several additional times, <u>see</u> Reply Br. of Appellants 20, we could not locate specific reference to the implied covenant of good faith and fair dealing in any other filings by Appellants.

-10-

bargained for by Appellants. If Watkins had no duty under the agreements to preserve Appellants' downline at all, we may not create a new obligation for Watkins to protect Appellants' downline in good faith. See Minnwest Bank Cent. v. Flagship Props. LLC, 689 N.W.2d 295, 300, 303 (Minn. Ct. App. 2004) (finding no violation of implied covenant of good faith and fair dealing in bank's denial of long-term financing to a small business, where no contractual duty to finance arose because condition precedent was never satisfied); see also Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd., 552 N.W.2d 254, 266, 268 (Minn. Ct. App. 1996) (finding sports merchandise manufacturer had no duty to obtain sales agent's permission before changing status of downline account, and therefore rejecting agent's breach of contract and breach of implied covenant claims).

C.

Lastly, Appellants argue the district court, on remand, erroneously relied upon the 2006 Agreement to support its grant of summary judgment. Appellants argue it was unclear whether the 2006 Agreement governed the dispute, and so the district court could not grant summary judgment based on the 2006 Agreement. This is simply incorrect. The parties agree that either the 1988 Agreement or the 2006 Agreement governs this dispute. Even if it is unclear which agreement controls, summary judgment is still appropriate if Watkins did not breach either agreement. That is precisely what the district court found here. The district court did not err by analyzing whether a breach occurred under either the 1988 Agreement or the 2006 Agreement, even if a factual dispute persisted as to which agreement controlled.

III.

Appellants also raise several equitable counterclaims, arguing they are eligible for relief under theories of quantum meruit, promissory estoppel, and unjust enrichment. The district court dismissed these counterclaims during both rounds of

-11-

lower court litigation, holding that equitable relief is unavailable in Minnesota where, as here, the rights of the parties are governed by a valid contract. See U.S. Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981). We agree. Here, the rights of the parties are governed by either the 1988 Agreement or the 2006 Agreement, and so a valid contract governs this dispute. Thus, the district court did not err in dismissing Appellants' equitable counterclaims. See Cady v. Bush, 166 N.W.2d 358, 362 (Minn. 1969) ("Courts are not warranted in interfering with the contract rights of parties as evidenced by their writings which purport to express their full agreement.").

Appellants argue that even if a valid contract exists and bars recovery under theories of promissory estoppel and unjust enrichment, Minnesota law allows recovery in quantum meruit if the contract "is found not to address a benefit conferred for which recovery is sought." We do not agree with this broad reading of Minnesota law, which suggests equitable recovery is available whenever a contract is silent regarding an alleged benefit. In contrast, Minnesota law instructs that when an express contract exists, recovery in quantum meruit is available if the contract is "not a full agreement concerning the details of compensation," Holman v. CPT Corp., 457 N.W.2d 740, 745 (Minn. Ct. App. 1990), or if there is "confusion concerning details of the compensation," Frankson v. Design Space Int'l, 394 N.W.2d 140, 145 (Minn. 1986).

Here, Appellants have not identified any evidence in the record suggesting an incomplete or confusing agreement regarding compensation. Appellants (and other sales associates) receive commissions and product discounts based on the volume of downline sales, in amounts prescribed by the parties' contract. Whether or not Watkins may reclassify the Lambert Group admittedly impacts Appellants' compensation—it determines whether Appellants are entitled to substantial commissions—but it simply does not bear on the completeness or clarity regarding

-12-

the details of compensation under either agreement.  Absent any such confusion, quantum meruit is not available to Appellants.

## IV.

Accordingly, we affirm.

_____